VIRGIN, The (UNITED STATES v.). See Case No. 16,625.

---

## Case No. 16,957.

### The VIRGINIA.

[3 Biss. 48,[1] 3 Chi. Leg. News. 329.]

Circuit Court, S. D. Illinois. June Term, 1871.

SALVAGE—STRANDED MISSISSIPPI STEAMER.

1. Where a steamer, stranded in the Mississippi river, employs another less powerful one to assist in getting her off, it is the duty of the former to see that there are no obstacles or dangers in the place where the proposed movement is to be made.

2. Where, by the joint efforts of both steamers, the stranded steamer is got off, the general direction and control of the movement being with her, she is liable for the loss of the other steamer, wrecked in the manoeuver, and also for the services rendered.

3. The smaller steamer not having supplied the sole motive power, does not, under such circumstances, run the risks of salvage service.

Appeal from decree of district court [of the United States for the Southern district of Illinois], on a libel filed by owners of the steam ferryboat Missionary against the steamboat

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

Virginia for services and damages for loss of vessel.

Green & Gilbert, for libellant.
Allen, Mulkey & Wheeler, for respondent.

DRUMMOND, Circuit Judge. The Virginia, while on a voyage from St. Louis to New Orleans, in the fall of 1868, ran on a "log heap" in the Mississippi river, a few miles below New Madrid. She struck with her bow and thus lay fast with her stern up stream. After several ineffectual efforts to get off by lighting and by the use of the engines, a message was, on the evening of the 24th of October, sent to Cairo for assistance, and on the morning of the 25th the Missionary, in answer to the message, arrived and rounded to on the starboard side of the Virginia in a reverse position,—the bow of the Missionary being up stream. They were thus fastened together side by side, the stern of the Missionary and the bow of the Virginia being nearly opposite to each other. They were, however, of very unequal length. The Virginia was of considerable size and power,—two hundred and twenty-eight feet long, eight hundred and ninety tons burthen, and had on board at the time she struck four hundred and fifty tons of freight. The Missionary was one hundred and thirty-eight feet long and about one hundred tons burthen.

After the arrival of the Missionary, about sixty tons of freight, more or less, were removed from the Virginia to the Missionary. It was then resolved that another effort should be made to get the Virginia off. The undisputed facts are, that the two steamers were fastened together in the manner stated, steam raised on both, and the engines of each put in operation at about the same time; the Virginia was thus backing and the Missionary trying to go ahead. Very soon both started, and the result was that the Virginia got off the "log heap" and the Missionary ran on a snag, stove a hole in her bottom, and shortly after sunk and became a loss, except as to some part of her machinery.

The libellants claim that the captain of the Virginia took entire control of the Missionary and that the former is liable for the loss as an act of negligence, as well as for the value of the services rendered. On the other hand it is insisted the Missionary was under the management of her own officers and men, and took the ordinary risks incident to a salvage service. The two steamers were fastened together by the joint act of the officers and men of both. The co-operation of the Missionary in removing the Virginia from the "log heap" was with the consent and acquiescence of the officers of the Missionary. Webb, the quasi captain of the Missionary, and Kauffman, the engineer, agreed to assist by the action of the engines in getting the Virginia off. But this seems to have been the extent of the aid given by the Missionary. The general direction and control of the movement was with the Virginia. If it

be conceded the service of the Missionary was a salvage service, which is apparently the footing upon which the libellants seek to place it, then it involved the ordinary risks of that kind of service, and no more. It may be admitted that if a steamer, in trying to save a stranded vessel by its own motive power, is lost or injured by the movement, it is one of the necessities of the service, and is a risk assumed as such. It is because as well of the peril to the vessel or property saved, as the risk to the salvor, that courts of admiralty allow more than a quantum meruit compensation. If the Missionary had in this case been the sole motor, a more rigid measure of responsibility would have attached. And the case must turn mainly on this: Whose peculiar duty was it, under the circumstances, to foresee and guard against the possible consequences of success in the effort which was about to be made? The Virginia had employed the Missionary to aid in the relief without any special contract as to the terms on which it was to be affected. The former was many times larger and more powerful than the latter, and in case of motion, even though lashed together, would substantially control the Missionary. It was, therefore, the duty of the Virginia, in a special manner, to explore the spot that might be passed over in the movement proposed to be made, and to see that there was no obstacle in the way which would be likely to cause disaster. The fact that the officers of the Missionary acquiesced in the demand made for the assistance of the engines, did not make them responsible farther than for the consequences necessarily growing out of such consent. If the case had been reversed and the Virginia had been lost, it could scarcely be maintained, in the absence of willful fault on the part of the Missionary, that the latter would have been liable for the loss, or even for an apportionment of the loss. 2 Pars. Shipp. & Adm. 263. The Virginia had been on the "log heap" more than a day, and had had every opportunity for examination; in fact, had sounded, in order to ascertain the depth of water. The Missionary was employed by the Virginia to perform a special service—to aid in moving the latter from the "log heap." If the assistance rendered had been that of lighting only, there can be no doubt it would have been the duty of the Virginia to take reasonable care of the Missionary, and the Missionary, in such case, could scarcely be held accountable for the dangers of navigation; and the fact that the officers of the Missionary merely assented to the action of the engineers cannot change the rule. Webb, on the Missionary, gave notice to the captain of the Virginia of the approaching danger. It is asserted the warning was not heard, but it at least shows that some of the parties foresaw the peril of the movement—something which the Virginia ought also to have foreseen and guarded against. The evidence shows that if proper vigilance and prudence had been used by the Virginia, the disaster might have been prevented. The open snags could have been seen, the hidden ones discovered.

No great stress is placed upon the admissions of the captain of the Virginia, to the effect that the loss might be paid as soon as ascertained, because that was nothing more, at most, than an admission that the Virginia was liable for the loss, a question of law under the facts of the case.

The district court allowed five hundred dollars as the value of the services rendered, and four thousand dollars for the loss, or damage. [Case unreported.] I shall not give any interest on the decree of the district court, but will affirm the decree as the decree of this court for that amount as found of the present date.